**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

ROUTE GUIDANCE SYSTEMS LLC,

     Plaintiff,

v.

DOORDASH, INC.,

     Defendant.

Case No. 1:22-cv-00176-MN

**DEFENDANT DOORDASH, INC.'S MOTION TO DISMISS UNDER
FEDERAL RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM**

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(c), Defendant DoorDash, Inc. ("DoorDash" or "Defendant") moves for dismissal of Plaintiff Route Guidance System's ("RGS" or "Plaintiff") Complaint for infringement of U.S. Patent No. 6,917,876 ("the '876 patent"). The Complaint, its attachments, and the '876 patent itself confirm that the use of the accused Dasher App does not meet core limitations that run through all of the patent claims, including claims 1 and 26 specifically referenced in Plaintiff's allegations. Therefore, RGS's has not, and cannot, make a plausible claim of direct infringement. RGS's claims of indirect and willful infringement likewise should be dismissed, both because RGS's claim for direct infringement is implausible and because RGS's pleading of the knowledge elements of indirect and willful infringement relies solely upon service of its Complaint. Finally, RGS's claim for monetary damages should be dismissed because RGS has failed to plead compliance with the notice and marking provisions of 35 U.S.C. § 287.

WHEREFORE, Defendant DoorDash, Inc. requests that the Court enter an Order dismissing all claims alleged in Plaintiff's Complaint with prejudice.

Respectfully Submitted,

**BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP**

Dated:  May 27, 2022

*/s/ Kevin Capuzzi*
Kevin Capuzzi (No. 5462)
Noelle B. Torrice (No. 5957)
Benesch Friedlander Coplan & Aronoff LLP
131 N. Market St., Suite 1201
Wilmington, DE 19801
Tel: (302) 442-7010
kcapuzzi@beneschlaw.com
ntorrice@beneschlaw.com

Charanjit Brahma (*Pro hac vice*)
Benesch Friedlander Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, CA 94111
Tel: (628) 600-2250
cbrahma@beneschlaw.com

Zaiba Baig (*Pro hac vice*)
Benesch Friedlander Coplan & Aronoff LLP
71 South Wacker Dr., Suite 1600
Chicago, IL 60606
Tel: (312) 212-4949
zbaig@beneschlaw.com

*Attorneys for Defendant DoorDash, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

ROUTE GUIDANCE SYSTEMS LLC,

      Plaintiff,

v.

DOORDASH, INC.,

      Defendant.

Case No. 1:22-cv-00176-MN

**DEFENDANT DOORDASH, INC.'S MOTION TO DISMISS UNDER**
**FEDERAL RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM**

Kevin Capuzzi (No. 5462)
Noelle B. Torrice (No. 5957)
Benesch Friedlander Coplan & Aronoff LLP
131 N. Market St., Suite 1201
Wilmington, DE 19801
Tel: (302) 442-7010
kcapuzzi@beneschlaw.com
ntorrice@beneschlaw.com

Charanjit Brahma (*Pro hac vice*)
Benesch Friedlander Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, CA 94111
Tel: (628) 600-2250
cbrahma@beneschlaw.com

Zaiba Baig (*Pro hac vice*)
Benesch Friedlander Coplan & Aronoff LLP
71 South Wacker Dr., Suite 1600
Chicago, IL 60606
Tel: (312) 212-4949
zbaig@beneschlaw.com

Dated:  May 27, 2022

## <u>TABLE OF CONTENTS</u>

<b>Page</b>

TABLE OF AUTHORITIES ........................................................................................... ii

I.      INTRODUCTION ............................................................................................ 1

II.     BACKGROUND .............................................................................................. 2

        A.      The Dasher App ................................................................................... 3

        B.      The '876 Patent .................................................................................... 4

III.    LEGAL STANDARD ....................................................................................... 7

        A.      Fed. R. Civ. P. 12(b)(6) ....................................................................... 7

        B.      Fed. R. Civ. P. 12(c) ........................................................................... 9

IV.     ARGUMENT ................................................................................................... 10

        A.      Plaintiff's Allegations of Direct Infringement Should be Dismissed .................. 10

                1.      Plaintiff's infringement allegations necessarily fail because
                        use of the Dasher App does not involve sending route
                        guidance data to a "vehicle," as the patent claims all
                        require. .................................................................................... 11

                2.      Independently, Plaintiff's infringement allegations
                        necessarily fail because Internet routing does not use a
                        dedicated "channel" that is opened, closed and then re-
                        opened. ..................................................................................... 13

        B.      Plaintiff's Allegations of Indirect and Willful Infringement Should
                be Dismissed Because Plaintiff Has Not Adequately Pled Pre-Suit
                Knowledge ........................................................................................... 15

        C.      Plaintiff is Not Entitled to Pre-Complaint Damages, Because it has
                not Pled that it Complied with 35 U.S.C. § 287 ................................... 18

V.      CONCLUSION ................................................................................................ 19

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012)................................................................................19

*Agrofresh Inc. v. Essentiv LLC*,
C.A. No. 16-662-MN, 2019 WL 350620 (D. Del. Jan. 29, 2019) ...........................8

*American Med. Sys., Inc. v. Med. Eng'g Corp.*,
6 F.3d 1523 (Fed. Cir. 1993)....................................................................................18

*Amgen Inc. v. Coherus Biosciences Inc.*,
No. 17-546-LPS-CJB, 2018 WL 1517689 (D. Del. Mar. 26, 2018), *aff'd*, 931
F.3d 1154 (Fed. Cir. 2019)..........................................................................................9

*Arctic Cat Inc. v. Bombardier Rec. Prods.*,
876 F.3d 1350 (Fed. Cir. 2017)................................................................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................8

*Boston Sci. Corp. v. Nevro Corp.*,
*2019 WL 6310225* (D. Del. Nov. 25, 2019)............................................................16

*Commil USA, LLC v. Cisco Sys., Inc.*,
135 S. Ct. 1920 (2015)..............................................................................................15

*Cross Medical Prods., Inc. v. Medtronic Sofamor Danek*,
424 F.3d 1293 (Fed. Cir. 2005)................................................................................10

*Cumberland Pharm. Inc. v. Sagent Agila LLC*,
No. 12-825-LPS, 2013 WL 5913742 (D. Del. Nov. 1, 2013)....................................9

*DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*,
2019 WL 3069773 (D. Del. July 12, 2019) .............................................................17

*Express Mobile, Inc. v. Liquid Web, LLC*,
No. 1:18-CV-01173-RGA, 2019 WL 2514418 (D. Del. Apr. 15 2019)............18, 19

*Helios Streaming, LLC v. Vudu, Inc.*,
2020 WL 3167641 (D. Del. June 15, 2020)..........................................................2, 16

*Hologic, Inc. v. Minerva Surgical, Inc.*,
    325 F. Supp. 3d 507 (D. Del. 2018) ................................................................. 9

*Kimble v. Marvel Entertainment, LLC*,
    576 U.S. 446 (2015) .......................................................................................... 17

*LML Holdings, Inc. v. Pac. Coast Distrib. Inc.*,
    2012 WL 1965878 (N.D. Cal. May 30, 2012) ................................................. 16

*Mallinckrodt, Inc. v. E-Z-EM Inc.*,
    670 F. Supp. 2d 349 (D. Del. 2009) ............................................................... 16

*Maxwell v. J. Baker, Inc.*,
    86 F.3d 1098 (Fed. Cir. 1996) ......................................................................... 18

*Motorola Inc. v. United States*,
    729 F.2d 765 (Fed. Cir. 1984) ......................................................................... 18

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
    138 F.3d 1437 (Fed. Cir. 1998) ....................................................................... 18

*Ottah v. Fiat Chrysler*,
    884 F.3d 1135 (Fed. Cir. 2018) ............................................................. 8, 11, 13

*Revell v. Port Auth. of N.Y. & N.J.*,
    598 F.3d 128 (3d Cir. 2010) ............................................................................... 8

*Seal-Flex, Inc. v. Athletic Track & Court Const.*,
    172 F.3d 836 (Fed. Cir. 1999) ......................................................................... 10

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017) ........................................................................... 8

*Umland v. PLANCO Fin. Servs.*,
    542 F.3d 59 (3d Cir. 2008) ................................................................................. 8

*Xpoint Techs., Inc. v. Microsoft Corp.*,
    730 F. Supp. 2d 349 (D. Del. 2010) ............................................................... 16

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
    528 F. Supp. 3d 247 (D. Del. 2021) ............................................................... 16

## I.      INTRODUCTION

DoorDash, Inc. respectfully requests that this Court dismiss with prejudice Plaintiff Route Guidance Systems LLC's Complaint for infringement of U.S. Patent No. 6,917,876 ("the '876 patent"). The Complaint, its attachments, and the '876 patent itself confirm that the use of the accused Dasher App does not meet core limitations that run through all of the patent claims, including claims 1 and 26 specifically referenced in Plaintiff's allegations.

All of the patent claims require that route guidance data calculated by a central computer be provided to a "vehicle." The '876 patent attaches no special meaning to that term. Yet, Plaintiff's Complaint makes clear that the only way to allege infringement of these patent claims is to treat a mobile phone loaded with the Dasher App as if it was a "vehicle." It is simply not plausible for Plaintiff to twist the plain language of the claims in that manner to plead infringement.

Similarly, the Complaint makes much of the fact that the claimed invention allegedly introduced the innovation of requiring communication between the central computer and the vehicle to take place in short bursts over a channel that is opened, closed and re-opened as needed. But the very information Plaintiff cites about transmission over a mobile communication network confirms that such networks do not dedicate a channel for such communications as the claims require.  Instead, such networks switch communications from channel to channel as needed to accommodate call traffic within a cell and movement of callers from cell to cell. Thus, Plaintiff's own filing confirms that this key limitation is not met.  Because it is clear that use of the Dasher App cannot meet either of these fundamental claim limitations, this Court has no choice but to dismiss Plaintiff's infringement claim in its entirety with prejudice.

Plaintiff's claims for inducement under 35 U.S.C. § 271(b), contributory infringement 35 U.S.C. § 271(c), and willful infringement 35 U.S.C. § 284 likewise fail because Plaintiff pleads only that DoorDash knew of the '876 patent and that its acts allegedly infringed "at least as early

as the filing of this Complaint." Multiple prior decisions of the Court have stated that the filing of a complaint cannot trigger a claim of indirect infringement or willful infringement. "The purpose of a complaint is to obtain relief from an existing claim and not to create a claim." *Helios Streaming, LLC v. Vudu*, *Inc.,* 2020 WL 3167641, at *2 n.1 (D. Del. June 15, 2020). But even if the filing of a complaint could in some instances theoretically support a plaintiff's indirect and willful infringement claims for the post-complaint period, it does not suffice here, because Plaintiff's allegations of direct infringement are so flawed that inferring such knowledge in this case would be improper and the patent expired on the date of service. Accordingly, this Court should also dismiss Plaintiff's claims of inducement, contributory infringement and willful infringement with prejudice.

Finally, because Plaintiff fails to allege that it has complied with the marking and notice requirements under 35 U.S.C. § 287, this Court should dismiss the portion of Plaintiff's claim for past damages that relies upon acts of infringement that allegedly took place before the Complaint was filed.

## II.    BACKGROUND

On February 9, 2022, Plaintiff filed its Complaint (Dkt. No. 1) alleging that DoorDash has directly (*id.* at ¶ 33) and indirectly (*id.* at ¶¶ 35-37) infringed U.S. Patent No. 6,917,876 by "making, using, providing, and/or causing to be used products, systems and/or software solutions," specifically the Dasher App and its related computer systems operated by DoorDash that work in conjunction with the Dasher App ("Accused Instrumentalities") (*id.* at ¶ 33).[1] Plaintiff did not formally serve its Complaint on Door Dash until May 6, 2022.

---

[1] This Court has previously rejected motions to dismiss claims asserting infringement of the '876 patent on different grounds, namely that the patent was not directed to patent-eligible subject matter under 35 U.S.C. § 101. C.A. No. 20-221, Dkt. No. 42 and C.A. No. 20-222, Dkt. No. 31.

A.      **The Dasher App**

DoorDash, Inc, is a company that operates a third-party logistics platform that is used to facilitate deliveries between consumers, merchants, and "Dashers", or independent contractor delivery providers. DoorDash provides the Dasher App, a smartphone application, to Dashers to facilitate the logistics of receiving and completing delivery opportunities. The application provides a Dasher with navigation to "pick[] up, drop[] off, and complet[e] deliveries on time and safely."[2] The application further facilities "[f]aster pickups and drop-offs…just a swipe away." A Dasher can use the Dasher App to accept and order, then be provided with all the relevant information [the Dasher] need[s] as [they] arrive[s] at the merchant, including the restaurant name & specific pickup instruction." The Dasher is also provided with the delivery drop-off destination. The In-App Navigation feature is "powered by Google Maps." The Dasher App provides information to the Dasher Dx and at no time communicates with a vehicle.

1. **Accept an order.** When you accept an order, you'll automatically be taken to DoorDash In-App Navigation powered by Google Maps.



---

While DoorDash agrees with previous defendants that the '876 patent is invalid under Section 101, at this stage DoorDash does not raise this ground for dismissal.
[2]      The excerpts come from https://help.doordash.com/dashers/s/article/In-app-Navigation?language=en_US, the same website that is cited in Plaintiff's Complaint. As a result, it should properly be considerable by the court on the motion to dismiss.

2. **See full details for a faster pick-up.** Swipe to see all the relevant information you need as you arrive at the merchant, including the restaurant name & specific pickup instructions.



3. **Easily navigate to your customer for faster drop-offs.** The app will automatically zoom in to highlight the drop-off destination upon arrival. It will also show building numbers and details to make sure you can get there, but tap the phone or message icon if you need to contact the customer.



## B.     The '876 Patent

The '876 patent purportedly describes a system for vehicles that "calculate[es] and provid[es] route guidance to a vehicle, with reduced installation and running costs." (Dkt. No. 1 at ¶ 10). Plaintiff alleged several advantages over prior art, such as the inclusion of a transmission channel that may be closed and centralized route guidance for vehicles, that purportedly present significant commercial value for companies like DoorDash. (*Id.* at ¶ 16). Most notable, Plaintiff accuses DoorDash of infringing on its '876 patent through the use of its Dasher App and related computer systems (the "Accused Instrumentalities").

4



*Drawing Sheet for the '876 patent*

Plaintiff alleges the Accused Instrumentalities infringe at least independent claims 1 and 26 of the '876 patent which are directed to methods and systems "to calculate route guidance data and provide a route for the vehicle to the desired destination, supply the vehicle with the route guidance data over a channel of communication open for a short burst and then closed, until a need for further transmission arises, receive the route guidance data from the central computer, and present instructions to the vehicle as to the route to be taken to the destination" (Dkt. No. 1 at ¶ 11) – i.e., route guidance for vehicles. Plaintiff claims it was unable to identify "any substantial differences" between the elements of claims 1 and 26 and the Dasher App and back-end servers. (*Id.*, Ex. 2).  In fact, the Complaint alleges that the Dasher App performs "substantially the same function", "in substantially the way", to achieve "substantially the same result" as claims 1 and 26. The asserted claims are reproduced below[3]:

---

[3] The claims are reproduced as corrected by the Certificate of Correction.

1. A route guidance system for guiding a driver of a vehicle to a desired destination *on a road network*, comprising:

a central computer adapted to calculate route guidance data providing a route for the vehicle to the desired destination;

means for supplying the vehicle with the route guidance data calculated by the central computer, *providing a channel of communication which is opened* to transmit said route guidance data to the vehicle in a short burst and *is then closed*, so that transmission to the vehicle via said channel ceases, unless and until a need for further transmission via said channel to the vehicle arises;

means for receiving the route guidance data calculated by the central computer; and

means for presenting respective instructions to the vehicle as to the route to be taken to the desired destination.

26. A route guidance method for a vehicle, comprising:

supplying to the vehicle route guidance data calculated by a central computer as to the route for the vehicle to take to a desired destination by opening a channel of communication to transmit the route guidance data to the vehicle in a short burst and then closing said channel of communication so that transmission to that vehicle via said channel ceases, unless and until a need for further transmission via said channel to said vehicle arises, and

presenting instructions to the driver of the vehicle as to the route to be taken to the desired destination.

(Dkt. No. 1, Ex. 1, '876 Patent at 4:62-5:12). Thus, according to the plain language of the claims, the "route guidance data" the central computer calculates must be supplied to "the vehicle" that is being driven. In claim 1, that same "vehicle" is also separately presented with "instructions … as to the route to be taken," while in claim 26, the instructions are instead presented to the driver.

All of the claims further require a specific type of communication to transmit the route guidance data to the vehicle.  Specifically, the claims all require that the route guidance data be transmitted "by *opening a channel* of communication … to the vehicle in a short burst and then *closing said channel* of communication so that transmission to that vehicle via said channel ceases,

unless and until a need for further transmission via ***said channel*** to said vehicle arises." Thus, among other things, the claims all require that the route guidance communications between the central computer and the vehicle all occur on a ***dedicated*** channel within the mobile telephone network that is opened, closed and re-opened as needed.

The Complaint characterizes the patented inventions as "related to automating the process of transmitting route guidance data to the vehicle while minimizing the required network connectivity, thereby reducing overall cost and complexity." (*Id.* at ¶ 18). The Complaint concedes that "[t]he improvements of the '876 patent stem from the characteristics of packet data networks compared to circuit switched networks that are far less efficient when communicating through short bursts." (*Id.* at ¶ 20). Notably, however, the '876 patent specification never discusses packet data networks. Nor would one expect it to, since the specification describes a single system in which a Dasher (dx) uses an in-vehicle installed device (element 4 in the '876 patent's lone figure) to initiate a telephone call to a human-operated call center and simultaneously that installed device uses the same connection to receive route guidance data from the central computer:

> For ease of explanation the connections 3, 5 and 26 for one device 4 are shown as separate connections but, in practice, they will all be a single channel 1 of communication, for example a single mobile telephone connection.

> The method of operation of the system is as follows. A driver in a vehicle uses the device 4 to telephone the call centre operator, giving his intended destination, while the device 4 Supplies automatically over the connection 5 to the computer 6 initially its CLI (calling line identity) and then the GPS position of its vehicle.

(Dkt. No. 1, Ex. 1, '876 Patent at 3:56-66.)

## III.   LEGAL STANDARD

### A.   Fed. R. Civ. P. 12(b)(6)

To state a claim upon which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

7

Detailed factual allegations are not required, but the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the non-moving party. *Umland v. PLANCO Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008). A complaint must include more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555 (citation omitted). "[A] court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (quoting *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014)). "Nor is the Court required to accept as true bald assertions, unsupported conclusions, or unwarranted inferences." *Agrofresh Inc. v. Essentiv LLC*, C.A. No. 16-662-MN, 2019 WL 350620, at * 1 (D. Del. Jan. 29, 2019) (citing *TriPlay, Inc. v. WhatsApp Inc.*, C.A. No. 13-1703-LPS-CJB, 2018 WL 1479027, at *3 (D. Del. Mar. 27, 2018).

A motion to dismiss under Rule 12(b)(6) should be granted if the complaint lacks a cognizable legal theory. *See Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). A claim is not facially plausible unless the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." (*Id.* at 679) (citation omitted). It is proper for a district court to dismiss an infringement claim when there are no relevant facts in dispute and it is clear as a matter of law that the defendant cannot infringe. *Ottah v. Fiat*

*Chrysler*, 884 F.3d 1135, 1141-42 (Fed. Cir. 2018) (affirming dismissal when the claims required a "book holder," the defendants' products were mobile cameras, and prosecution history estoppel barred a finding of infringement under the doctrine of equivalents); *Amgen Inc. v. Coherus Biosciences Inc.*, No. 17-546-LPS-CJB, 2018 WL 1517689, at \*4 (D. Del. Mar. 26, 2018) (dismissing direct infringement claim when the plaintiff admitted there was no literal infringement and the undisputed facts established as a matter of law that prosecution history estoppel applied, which precluded a finding of infringement under the doctrine of equivalents), *aff'd*, 931 F.3d 1154 (Fed. Cir. 2019); *Cumberland Pharm. Inc. v. Sagent Agila LLC*, No. 12-825-LPS, 2013 WL 5913742, at \*3 (D. Del. Nov. 1, 2013) (dismissing an infringement claim when the patent expressly required a formulation "free of a chelating agent," and the accused product admittedly contained a chelating agent).

### B.    Fed. R. Civ. P. 12(c)

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter pleadings are closed — but early enough not to delay trial." "When evaluating a motion for judgment on the pleadings under Rule 12(c), as for a motion to dismiss under Rule 12(b)(6), the court must consider factual allegations in a complaint in the light most favorable to the non-moving party." *Hologic, Inc. v. Minerva Surgical, Inc.*, 325 F. Supp. 3d 507, 518 (D. Del. 2018) (citing *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)). "The court may consider matters of public record as well as authentic documents upon which the complaint is based if they are attached to the complaint or as an exhibit to the motion." (*Id.*) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994)).

IV.     **ARGUMENT**

A.     **Plaintiff's Allegations of Direct Infringement Should be Dismissed**

"To prove direct infringement, the plaintiff must establish by a preponderance of the evidence that one or more claims of the patent read on the accused device literally or under the doctrine of equivalents." *Cross Medical Prods., Inc. v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1310 (Fed. Cir. 2005) (citing *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001)). "To show infringement of a patent, a patentee must supply sufficient evidence to prove that the accused product or process contains, either literally or under the doctrine of equivalents, every limitation of the properly construed claim." *Seal-Flex, Inc. v. Athletic Track & Court Const.*, 172 F.3d 836, 842 (Fed. Cir. 1999). Plaintiff's Complaint makes clear that its infringement allegations are not plausible for two reasons. First, Plaintiff alleges that use of the accused Dasher App involves sending route guidance data to a mobile phone, not to a "vehicle" as required by each of the claims of the '876 patent. Second, even if the Court accepts Plaintiff's apparent allegation that use of packet-based Internet communications qualifies as transmitting route guidance data in the "short burst" required in each of the claims of the '876 patent[4], information cited in the Complaint itself makes clear that Internet packet transmission does not involve the use of a dedicated "channel" as the claims require. Because Plaintiff's own infringement allegations and the evidence within the four corners of the Complaint make clear that the accused Dasher App does not plausibly meet at least these two limitations of the asserted claims, this Court should dismiss Plaintiff's infringement claim in its entirety under Rule 12(b)(6) or 12(c).

_____

[4] While DoorDash accepts this allegation for purposes of argument in this motion, the allegation rests on a clear misinterpretation of the term "short burst."

1.     **Plaintiff's infringement allegations necessarily fail because use of the Dasher App does not involve sending route guidance data to a "vehicle," as the patent claims all require.**

System claim 1 requires that covered systems include a "means for supplying ***the vehicle*** with the route guidance data calculated by the central computer" as well as a "means for presenting respective instructions to ***the vehicle*** as to the route to be taken to the desired destination." (Dkt. No. 1, Ex. 1, '876 patent at Claim 1.) Method claim 26 likewise requires the step of "supplying to ***the vehicle*** route guidance data." (*Id.* at Claim 26). In alleging how the accused Dasher App supposedly infringes, Plaintiff fails to explain how the accused app could meet any of these limitations.

In the claim charts attached to its Complaint, Plaintiff notably never identifies any "vehicle" to which route guidance data or instructions are supposedly sent—by the Dasher App or otherwise. The closest Plaintiff comes is to allege that route guidance data is received by the Dasher App on a Dasher's mobile phone. (*See* Dkt. No. 1, Ex. 2 at 5 ("means for receiving said [route guidance] data is the Dasher App operating on a driver's smart device").) It goes without saying that a mobile phone is not a "vehicle"—no claim construction should be required to confirm that simple proposition in dismissing Plaintiff's claim. *See, e.g., Ottah*, 884 F.3d at 1141 (affirming district court's dismissal of plaintiff's patent infringement claim with prejudice where patent claims covered a "book" holder and plaintiff argued that a camera holder infringed). Moreover, no aspect of using the Dasher App involves sending route guidance data or any other instructions to a "vehicle." Sending information to a mobile phone cannot, by itself, constitute sending such data to a "vehicle" as required by the claims.

The claims themselves confirm that the term "vehicle" is used according to its plain and ordinary meaning and cannot be interpreted as encompassing a mobile phone. For example, the claims define a "vehicle" as something that is driven, because the claims explicitly refer to the

"*driver* of [a/the] vehicle". (*See, e.g.*, Dkt. 1, Ex. 1 at 4:62-63 (preamble of claim 1), 7:40-41 ("presenting instructions" limitation of claim 26). Moreover, multiple claims, including independent claims 1 and 25, specify that the vehicle travels to "a desired destination *on a road network*." In contrast, a mobile phone has no "driver" and its location is not limited to a "road network."

The patent specification reinforces that the patentee used distinct language to refer to a vehicle versus a mobile phone. For example, the specification describes an "in-vehicle device" (shown as element 4 in the patent drawing). "The in-vehicle devices are installed in respective vehicles of subscribers to the system and each device contains a GPS (Global Positioning System) receiver, a mobile telephone device, a speech synthesiser, a control microprocessor and a memory for speech synthesis." (Dkt No. 1, Ex. 1 at 2:47-51). The mobile telephone is used in the patented system to allow the driver of a vehicle to call a human operator at a call center to identify a desired destination. (*See, e.g., id.* at 3:60-66 ("The method of operation of the system is as follows. A driver in a vehicle uses the device 4 to telephone the call centre operator, giving his intended destination, while the device 4 supplies automatically over the connection 5 to the computer 6 initially its CLI (calling line identity) and then the GPS position of its vehicle.").) The specification's use of different terms to describe the "vehicle" being driven versus a mobile telephone that the driver may use to communicate clearly shows that the patentee's choice to use the term "vehicle" in the claims was intended to exclude something quite different, like a mobile phone, from the scope of that term.

That the "vehicle" recited in these patent claims cannot encompass a mobile phone is confirmed by the nonsensical results of Plaintiff's infringement theory, particularly Plaintiff's subsequent allegations about how the "means for presenting respective instructions to the vehicle"

limitation is met make no sense and are redundant. Under Plaintiff's theory, the "means for presenting respective instructions to the vehicle as to the route to be taken to the desired destination" limitation would somehow require the mobile phone to send instructions ***to itself***. The only way to harmonize the limitations of claim 1 requiring a "means for supplying the vehicle with the route guidance data calculated by the central computer" and a "means for presenting respective instructions to the vehicle as to the route to be taken to the desired destination" is to interpret the "means for presenting" as something different from the "vehicle" to which it is presenting instructions.

Where there is no plausible way to construe a patent claim to cover the accused product, dismissal with prejudice on non-infringement is the appropriate result. *See, e.g., Ottah*, 884 F.3d at 1141 (affirming district court's dismissal of plaintiff's patent infringement claim with prejudice where patent claims covered a "book" holder and plaintiff argued that a camera holder infringed). Just as in *Ottah*, where the district court and Federal Circuit found there was no plausible way to construe the claim term "book" to encompass a camera, so to here, the claim term "vehicle" cannot plausibly be construed to cover a mobile phone with the Dasher App installed on it. No further good-faith recitation of facts can alter that reality. For this reason alone, Plaintiff's infringement claim should be dismissed in its entirety with prejudice.

> **2. Independently, Plaintiff's infringement allegations necessarily fail because Internet routing does not use a dedicated "channel" that is opened, closed and then re-opened.**

Asserted system claim 1 of the '876 patent requires that the "means for supplying the vehicle with the route guidance data" performs that function by "providing a channel of communication which is opened to transmit said route guidance data to the vehicle in a short burst and is then closed, so that transmission to the vehicle via ***said channel*** ceases, unless and until a need for further transmission via ***said channel*** to the vehicle arises." (Dkt. No. 1, Ex. 1 at 5:1-8).

Similarly, asserted method claim 26 requires that the step of "supplying to the vehicle route guidance data" includes "opening a channel of communication to transmit the route guidance data to the vehicle in a short burst and then closing said channel of communication so that transmission to that vehicle via said channel ceases, unless and until a need for further transmission via said channel to said vehicle arises." (*Id.* at 7:34-39). Because the claims require that further transmissions take place on "said channel," the claims explicitly require that a ***dedicated*** mobile network communications channel be used.

Plaintiff's infringement allegations, and the evidence cited therein, confirm that quite the opposite is true in the use of the accused Dasher App. To be clear, Plaintiff cites no evidence about how a communication channel is opened, closed or re-opened during the use of the Dasher App— it merely implies that such activity is a function of the standard implemented by the network by citing to general information about the 4G network in its claim chart exhibit. But that information confirms that under the 4G standard, communications may be switched from channel to channel based on system load within a cell and as communications are handed off from cell to cell within the network ("channel-dependent scheduling"). (Dkt. No. 1, Ex. 2 at 6 (noting that "channel-dependent scheduling" is a feature of 4G network communications); *see also* Ex. A, Vergados, Dimitrios D. *et al.*, "Channel Allocation Handoff Schemes for Cellular Wireless Networks: an overview," Proceedings of the 5th International Network Conference, pp. 425-432 (2005) ("Handoff is the process of ***changing the channel*** (frequency, time slot, spreading code, or combination of them) ***associated with the current connection while a call is in progress***. Handoff is the key component of the cellular concept in order to provide QoS to the users and to support mobility of the users.") (emphasis added).)

As a result, the information in Plaintiff's own Complaint shows that when the Dasher App is used, the system does not open a channel, close it and then re-open *the same channel* (*i.e.*, "said channel") when further communication is required. For this independent reason, use of the Dasher App cannot infringe the claims of the '876 patent, and this Court should dismiss Plaintiff's infringement claim in its entirety under either Rule 12(b)(6) or Rule 12(c).

### B.   Plaintiff's Allegations of Indirect and Willful Infringement Should be Dismissed Because Plaintiff Has Not Adequately Pled Pre-Suit Knowledge

In its Complaint, Plaintiff alleges that DoorDash has induced infringement of the '876 patent under 35 U.S.C. § 271(b) and contributorily infringed the '876 patent under 35 U.S.C. § 271(c). (Dkt. No. 1 at ¶¶ 35-37.) Plaintiff also alleges that DoorDash's infringement of the '876 patent has been willful under 35 U.S.C. § 285. (*Id.* at ¶ 38). These allegations are inadequate because Plaintiff has not plausibly alleged that DoorDash knew of the '876 patent or knew that its acts infringed the '876 patent before Plaintiff filed its Complaint. Rather, Plaintiff alleges only that "DoorDash has had actual knowledge of the '876 patent and that its acts were inducing infringement of the '876 patent since at least the time of receiving this Complaint." (Dkt. 1 at ¶ 36.) *See also*, Dkt. 1 at ¶ 34 ("DoorDash was made aware of the '876 patent and its infringement thereof at least as early as the filing of this Complaint.").

Without actual pre-suit knowledge of the '876 patent, DoorDash cannot be liable for either contributory infringement or inducement. Both contributory infringement and inducement require that the accused infringer knew both that the patent exists and that its acts were infringing. *See Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926-28 (2015) (holding liability under Section 271(b) "can only attach if the defendant knew of the patent and knew as well that 'the induced acts constitute patent infringement'" and contributory infringement requires the same "knowledge of the patent in suit and knowledge of patent infringement" as for induced

infringement) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)). As this Court has noted, the knowledge required to show willful infringement should be no less than what is required for indirect infringement. *See Boston Sci. Corp. v. Nevro Corp., 2019 WL 6310225*, at *7-8 (D. Del. Nov. 25, 2019); *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 249 (D. Del. 2021) (claims "based on willful infringement similarly require proof that the defendant knew about the asserted patents and knew or should have known that its conduct amounted to infringement of those patents.").

Plaintiff's filing of the Complaint "itself cannot be the source of the knowledge required to sustain claims of induced infringement." *ZapFraud*, 528 F. Supp. 3d at 250 (citing *VLSI Tech. LLC v. Intel Corp.*, 2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019) and *Dynamic Data Techs., LLC v. Brightcove Inc.*, 2020 WL 4192613, at *3 (D. Del. July 21, 2020)). "[K]nowledge after filing of the present action is not sufficient for pleading the requisite knowledge for indirect infringement." *Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 357 (D. Del. 2010); *see also Mallinckrodt, Inc. v. E-Z-EM Inc.*, 670 F. Supp. 2d 349, 354 n.1 (D. Del. 2009) ("The Court is not persuaded by Plaintiffs' contention that the requisite knowledge can be established by the filing of the Plaintiffs' Complaint."). Accordingly, the Court should dismiss Plaintiff's allegations of inducement under Section 271(b) and contributory infringement under Section 271(c). Similarly, "service of the…complaint does not warrant imposition of enhanced damages for willful conduct based solely upon post-filing conduct." *LML Holdings, Inc. v. Pac. Coast Distrib. Inc.*, 2012 WL 1965878, at *6 (N.D. Cal. May 30, 2012). "The purpose of a complaint is to obtain relief from an existing claim and not to create a claim." *Helios Streaming, LLC v. Vudu, Inc.,* 2020 WL 3167641, at *2 n.1 (D. Del. June 15, 2020).

16

Even if this Court is of the view that the receiving of a complaint alleging patent infringement may, in some circumstances, be sufficient to give a defendant the requisite knowledge of an asserted patent and of the alleged acts of infringement to support a post-complaint claim of indirect or willful infringement, *see, e.g., DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, 2019 WL 3069773, at *3 (D. Del. July 12, 2019) (allowing post-complaint claim of inducement), Plaintiff's filing of the Complaint in this particular case cannot give rise to such knowledge. As noted above in Section IV.A, Plaintiff's claim of direct infringement fails to identify how use of the accused Dasher App meets key limitations of each of the claims of the '876 patent. Accordingly, even after Plaintiff filed the Complaint, DoorDash did not have the requisite knowledge that its post-Complaint making, use or sale of the Dasher App would infringe the '876 patent.

Furthermore, should this Court allow the Complaint to serve as constructive knowledge of the '876 patent so as to permit for post-Complaint claims of indirect or willful infringement, the claims still must be dismissed. DoorDash was not served with the Complaint until the date of expiration of the '876 patent, May 6, 2022. It is black letter law that an expired patent cannot be infringed. When a patent expires, "the patentee's prerogatives expire too, and the right to make or use the article, free from all restriction, passes to the public." *Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446, 451 (2015). Therefore, even if the Complaint provides post-suit knowledge for indirect and willful infringement, it does so too late. Plaintiff is left without any grounds to pursue these claims.

Accordingly, this Court should dismiss Plaintiff's claims of inducement, contributory infringement, and willful infringement.

17

C.      **Plaintiff is Not Entitled to Pre-Complaint Damages, Because it has not Pled that it Complied with 35 U.S.C. § 287**

Plaintiff's request for an award of pre-suit damages should be dismissed because the Complaint fails to plead compliance with the notice and marking provisions of 35 U.S.C. § 287(a). The Federal Circuit has long held that in order to state a plausible claim for relief for patent infringement, the "patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement." *Arctic Cat Inc. v. Bombardier Rec. Prods*., 876 F.3d 1350, 1365 (Fed. Cir. 2017); *see also Maxwell v. J. Baker, Inc*., 86 F.3d 1098, 1111 (Fed. Cir. 1996); *Motorola Inc. v. United States*, 729 F.2d 765, 769-70 (Fed. Cir. 1984); *Nike, Inc. v. Wal-Mart Stores, Inc*., 138 F.3d 1437, 1446 (Fed. Cir. 1998). The marking statute "encourages the patentee to give notice to the public of the patent." *American Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538 (Fed. Cir. 1993). When a patent contains both method and apparatus claims, a patentee is required to mark "to the extent that there is a tangible item to mark by which notice of the asserted method claims can be given." *Id*. Even when marking is not required, as with patents that contain only method or process claims, a patentee must still allege compliance with § 287(a). *Express Mobile, Inc. v. Liquid Web, LLC*, No. 1:18-CV-01173-RGA, 2019 WL 2514418, at *2 (D. Del. Apr. 15 2019) ("A claim for past damages requires pleading compliance with the marking statute--even when compliance is achieved, factually, by doing nothing at all.").

The '876 patent includes both apparatus and method claims, and Plaintiff asserts infringement of both types—claim 1 directed to an apparatus and claim 26 directed to a method—in the Complaint. (Dkt. No. 1 at ¶¶ 33, 35; *see also id.* at ¶ 10 (alleging that the patented invention included "methods and apparatuses".) Thus, Plaintiff is required to comply with the marking requirement of § 287(a). Once a patentee asserts apparatus claims of a patent, the requirements of § 287(a)are triggered. *American Med. Sys*., 6 F.3d at 1538 (concluding that plaintiff was required

18

to comply with the marking statute "[w]here the patent contains both apparatus and method claims, … to the extent that there is a tangible item to mark by which notice of the asserted method claims can be given"); *see also ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1334 (Fed. Cir. 2012) ("In *American Medical*, [the Federal Circuit] held that if a single patent contains both apparatus claims and method claims, the marking requirement applies to all the claims.").

Moreover, even if the Plaintiff can ultimately prove it was not required to mark any products, it must still allege compliance with § 287(a). *Express Mobile, Inc. v. Liquid Web, LLC*, No. 1:18-CV-01173-RGA, 2019 WL 2514418, at *2 (D. Del. Apr. 15, 2019). Plaintiff does not even attempt to meet its burden to plead compliance with the marking statute. In the Prayer for Relief, Plaintiff's demand for "an award of damages to be paid by DoorDash adequate to compensate Plaintiff for DoorDash's past infringement of the '876 patent" (Dkt. 1 at ¶ B) cannot be supported, because Plaintiff has failed to plead compliance with the marking statute. *See Express Mobile*, No. 1:18-CV-01173-RGA, 2019 WL 2514418, at *2 (granting motion to dismiss for past damages even though plaintiff argued "there [was] no evidence that there was anything for it to mark" because plaintiff could "not argue that it pled compliance" with the marking statute). Accordingly, this Court should dismiss Plaintiff's claim for past damages.

## V.    CONCLUSION

For the foregoing reasons, DoorDash respectfully requests that Plaintiff's infringement claim be dismissed in its entirety with prejudice, because Plaintiff cannot plausibly claim that the making, use or sale of the accused Dasher App meets each and every limitation of any claim of the 876 patent. Additionally, DoorDash requests that this Court dismiss Plaintiffs' claims for contributory infringement, inducement to infringe and willful infringement prior to the filing of the Complaint, as well as its claim for past damages.

19

Respectfully Submitted,

**BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP**

Dated:  May 27, 2022                    */s/ Kevin Capuzzi*
                                        Kevin Capuzzi (No. 5462)
                                        Noelle B. Torrice (No. 5957)
                                        Benesch Friedlander Coplan & Aronoff LLP
                                        131 N. Market St., Suite 1201
                                        Wilmington, DE 19801
                                        Tel: (302) 442-7010
                                        kcapuzzi@beneschlaw.com
                                        ntorrice@beneschlaw.com

                                        Charanjit Brahma (*Pro hac vice*)
                                        Benesch Friedlander Coplan & Aronoff LLP
                                        100 Pine Street, Suite 3100
                                        San Francisco, CA 94111
                                        Tel: (628) 600-2250
                                        cbrahma@beneschlaw.com

                                        Zaiba Baig (*Pro hac vice*)
                                        Benesch Friedlander Coplan & Aronoff LLP
                                        71 South Wacker Dr., Suite 1600
                                        Chicago, IL 60606
                                        Tel: (312) 212-4949
                                        zbaig@beneschlaw.com


                                        *Attorneys for Defendant DoorDash, Inc.*

20

## <u>CERTIFICATE OF SERVICE</u>

I, Kevin M. Capuzzi, hereby certify that, on May 27, 2022, a true and correct copy of the foregoing Defendant DoorDash, Inc.'s Motion to Dismiss was served via CM/ECF on the attorneys of record.

*/s/ Kevin M. Capuzzi*

Kevin M. Capuzzi (DE No. 5462)
